## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
**CROSSFIT, INC.,**                                  )
                                                     )
    **Plaintiff,**                          )
                                                     )          **Civil Action No.**
    **v.**                                 )          **13-11498-FDS**
                                                     )
**DONNY MUSTAPHA, individually and**                 )
**d/b/a CROSSTRAIN SPORTS CLUB,**                    )
**f/k/a CHELMSFORD SPORTS CLUB,**                    )
                                                     )
    **Defendant.**                          )
_____)

### MEMORANDUM AND ORDER ON
### PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

**SAYLOR, J.**

    This is a motion for attorneys' fees, arising out of a protracted trademark infringement action against a *pro se* defendant. Plaintiff CrossFit, Inc., a fitness-training company, filed suit against defendant Donny Mustapha, who runs the CrossTrain Sports Club in North Chelmsford, Massachusetts.[1] The complaint asserted four claims: (1) trademark infringement under the Lanham Act; (2) false designation of origin under the Lanham Act; (3) trademark dilution under the Lanham Act; and (4) violation of Mass. Gen. Laws ch. 93A.

    In September 2013, the Court entered a preliminary injunction enjoining Mustapha from using the "CrossFit" mark and any substantially similar variation.[2] In July and August 2014,

---

[1] The CrossTrain Sports Club was formerly called the Chelmsford Sports Club. It now appears to be called the CrossBox Training Center.

[2] After CrossFit moved to modify the preliminary injunction, the Court adopted the report and recommendation of Magistrate Judge Dein in December 2014, which enjoined Mustapha from (1) using the phrase "Fitness isn't a sport it's a lifestyle," and (2) using "Fitness" (capitalized) when adjacent to "Cross."

both parties moved for summary judgment.  CrossFit moved for summary judgment on its trademark infringement claim, contending that Mustapha's use of the marks "CrossFit," "CrossBox," "CrossKick," and "CrossTrain" infringed on its trademark as a matter of law.  It also moved for summary judgment on its Chapter 93A claim.  Mustapha moved for summary judgment solely on the ground that CrossFit's claims were barred by the doctrine of unclean hands.

The Court denied Mustapha's motion for summary judgment.  It granted CrossFit's motion for summary judgment as to its infringement claim for Mustapha's use of the "CrossFit" mark.  However, the Court, denied CrossFit's motion as to its infringement claims for the "CrossBox", "CrossKick", and "CrossTrain" marks (the "new marks"), concluding that CrossFit had not established a likelihood of confusion as a matter of law.  The Court granted summary judgment for CrossFit on its Chapter 93A claim, but concluded that a trial was necessary for damages purposes to determine whether Mustapha acted willfully.

CrossFit then moved for an entry of judgment, stating that it intended to proceed before the Trademark Trial and Appeal Board ("TTAB") in order to oppose Mustapha's application for the "CrossBox" mark.  Specifically, CrossFit requested that the Court (1) enter judgment on the trademark infringement claim for the "CrossFit" mark (Count One) and the Chapter 93A claim (Count Four), (2) convert the existing preliminary injunction into a permanent injunction, and (3) award CrossFit statutory damages pursuant to 15 U.S.C. § 1117(c).  CrossFit agreed to dismiss its claims for trademark infringement as to the new marks, its claim for treble damages under Chapter 93A, and its claims for Lanham Act false designation (Count Two) and trademark dilution (Count Three).

The Court granted that motion and entered judgment against Mustapha on CrossFit's Chapter 93A claim and its trademark infringement claim for the "CrossFit" mark. The Court also converted the preliminary injunction into a permanent injunction and awarded CrossFit $10,000 in statutory damages under the Lanham Act for partially prevailing on its trademark infringement claim. The Court dismissed Counts Two and Three, as well as the trademark infringement claim concerning the new marks.

CrossFit has now moved to recover the fees and costs that it incurred in prosecuting its Chapter 93A claim and its related trademark infringement claim. Specifically, CrossFit is seeking attorneys' fees in the amount of $510,846.85, and costs in the amount of $24,016.45, for the two law firms and eighteen attorneys that litigated the case. For the following reasons, CrossFit's motion will be granted in the amount of $253,897.53 ($229,881.08 in attorneys' fees and $24,016.45 in costs), and otherwise denied.

I.      **Background**

The relevant facts are set forth in the Court's November 16, 2015 summary judgment order and its February 11, 2016 order entering judgment. The following background is provided only for summary purposes.

CrossFit, Inc., is a fitness-training company. The trademark for the "CrossFit" trade name and service mark used in connection with fitness-training services, Registration No. 3,007,458, was issued on October 18, 2005.

The CrossTrain Sports Club is a fitness facility in Chelmsford that is owned by Donny Mustapha. In May 2012, Mustapha contacted CrossFit to determine the process for becoming an affiliate. At some point between June and October 2012, Mustapha's club began offering

3

"CrossFit" classes, although it was not in fact affiliated with CrossFit.  After discovering

Mustapha was using the "CrossFit" mark in 2012, CrossFit sent Mustapha multiple cease-and-

desist letters demanding that he remove all references to "CrossFit" on the club's website and

promotional materials.  In January 2013, CrossFit discovered that Mustapha was still using the

"CrossFit" mark.  CrossFit again demanded that he immediately cease any use of the name.

Mustapha responded by promising to remove all references to "CrossFit" from the club's website

and advertising materials.

In June 2013, CrossFit discovered that Mustapha had begun to use the term "CrossFit"

again.  CrossFit filed this action on June 21, 2013.  The complaint asserted claims for

(1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1); (2) false

designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1); (3) trademark

dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); and (4) unfair and deceptive trade

practices in violation of Mass. Gen. Laws ch. 93A.

In September 2013, the Court granted CrossFit's motion for a preliminary injunction,

enjoining Mustapha from using the "CrossFit" mark, including any substantially similar

variation, in connection with his fitness-training services.

After the Court entered the preliminary injunction, Mustapha changed the name of his

club from the "Chelmsford Sports Club" to the "CrossTrain Sports Club."  He also began

promoting fitness-training classes that he referred to as "CrossBox," "CrossKick," and

"CrossTrain."  He also started using the slogan, "Fitness isn't a sport it's a lifestyle"— a takeoff

on the CrossFit slogan, "Fitness as a Sport."

In December 2014, the Court modified the preliminary injunction, enjoining Mustapha

from using the phrase "Fitness isn't a sport it's a lifestyle."  The modified preliminary injunction also required him to replace all references to "Fitness" (capitalized) with "fitness" (lower case) when adjacent to "Cross," and enjoined him from using the word "Fitness" (capitalized) when adjacent to "Cross."  CrossFit's motion to modify the preliminary injunction to enjoin Mustapha's use of the terms "CrossBox," "CrossKick," and "CrossTrain" was denied.[3]

In July and August 2014, both parties moved for summary judgment.  CrossFit moved for summary judgment on its trademark infringement claim, contending that Mustapha's use of the "CrossFit" mark and the three new marks infringed on its trademark as a matter of law.  It also moved for summary judgment on its Chapter 93A claim.  Mustapha moved for summary judgment solely on the ground that CrossFit's claims were barred by reason of unclean hands.

In February 2015, Mustapha filed a trademark application for "CrossBox" with the TTAB.  CrossFit opposed Mustapha's application in July 2015, and the TTAB suspended the proceeding pending the outcome of this litigation.

The Court issued a memorandum and order denying Mustapha's motion for summary judgment and granting in part CrossFit's motion for summary judgment.  The Court granted summary judgment for CrossFit on its trademark infringement claim for Mustapha's use of the "CrossFit" mark.  The Court also granted summary judgment for CrossFit on its Chapter 93A claim.  The Court, however, denied CrossFit's summary judgment motion on its infringement claims for the new marks and on its allegations that Mustapha violated Chapter 93A willfully.  On those issues, the Court determined that there were genuine issues of material fact warranting a trial.

---

[3] Although CrossFit sought a preliminary injunction and later, summary judgment as to Mustapha's alleged infringement of the new marks, it never amended its complaint to include that relief.

In December 2015, CrossFit moved for an entry of judgment.  Specifically, it requested that the Court enter judgment in its favor on the Chapter 93A claim and the trademark infringement claim for the "CrossFit" mark.  It also requested $200,000 in statutory damages, the maximum allowed for non-willful infringement under 15 U.S.C. § 1117(c).  CrossFit stipulated to dismissing Counts Two and Three, as well as the trademark infringement claim for the new marks, and it waived its right to pursue damages for a willful violation of Chapter 93A at trial.

In February 2016, the Court entered judgment for CrossFit on the Chapter 93A claim and the trademark infringement claim for the "CrossFit" mark.  It also converted the preliminary injunction into a permanent injunction and awarded CrossFit $10,000 in statutory damages under the Lanham Act.  Consistent with CrossFit's stipulation, the Court dismissed Counts Two and Three, as well as CrossFit's trademark infringement claim for the new marks.

## II.   Analysis

CrossFit has moved for an award of attorneys' fees and costs that it incurred in prosecuting its meritorious Chapter 93A claim, as well as the related trademark infringement claim.  Specifically, CrossFit is seeking attorneys' fees in the amount of $510,846.85 and costs in the amount of $24,016.45.

In June 2013, CrossFit retained Greenberg Traurig, LLP to represent it in this matter. Two Greenberg Traurig shareholders, Attorneys Victor H. Polk, Jr. and Zachary C. Kleinsasser, were CrossFit's lead attorneys, with average hourly billing rates over the course of the litigation of $848 and $570, respectively.[4]  Greenberg Traurig utilized sixteen other attorneys and staff members over the course of the litigation, including various other shareholders ($835 to $450 per

---

[4] Attorney Polk retired in February 2015.

hour), associates and law clerks ($435 to $225 per hour), and paralegals and research assistants ($370 to $140 per hour).  In March 2014, CrossFit retained Henshon Klein, LLP, a smaller firm, to assist Greenberg Traurig.  Two Henshon Klein attorneys, Terry Klein and Laura Greenberg-Chao, represented CrossFit and charged $300 per hour.

Mustapha has not opposed CrossFit's fee request with any particularity, other than to point out that its request is more than 50 times the $10,000 statutory damages award under the Lanham Act.  Mustapha has also indicated that regardless of the final fee award, he will not be able to pay any substantial amount of money.

Under Section 11 of Chapter 93A, a "party who establishes a violation '*shall . . . be awarded reasonable attorneys' fees and costs incurred in connection with said action.*'"  *Janney Montgomery Scott LLC v. Tobin*, 571 F.3d 162, 164 (1st Cir. 2009) (emphasis and alteration in original) (quoting Mass. Gen. Laws ch. 93A, § 11); *accord Twin Fires Inv. v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 427 (2005).  A fee award under Chapter 93A shall be awarded "irrespective of the amount in controversy."  Mass. Gen. Laws ch. 93A, § 11.

"Under Massachusetts precedent, fees and costs for non-Chapter 93A claims are recoverable provided that those claims and the Chapter 93A claims arise from a 'single chain of events . . . .'"  *Haddad Motor Grp., Inc. v. Karp, Ackerman, Skabowski & Hogan, P.C.*, 603 F.3d 1, 10 (1st Cir. 2010) (quoting *DiMarzo v. American Mut. Ins. Co.*, 389 Mass. 85, 106 (1983)); *see also Hanover Ins. Co. v. Sutton*, 46 Mass. App. Ct. 153, 177 (1999) (holding that when a "single chain of events" or "common core of facts" links a non-Chapter 93A claim with a Chapter 93A claim, apportionment of legal effort between the two claims is not necessary).

Although some courts have applied the "lodestar" method in calculating attorneys' fees

under Chapter 93A, the SJC has provided more flexible guidance:

> While the amount of a reasonable attorney's fee is largely discretionary, a judge "should consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation, and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases."

*Twin Fires*, 445 Mass. at 429-30 (quoting *Linthicum v. Archambault*, 379 Mass. 381, 388-89 (1979)); *accord RFF Family P'ship, LP v. Link Dev., LLC*, 2015 WL 1472253, at *2 (D. Mass. Mar. 31, 2015) (citing the seven *Linthicum* factors); *Gabriel v. Jackson Nat'l Life Ins. Co.*, 2015 WL 1410406, at *24 (D. Mass. Mar. 26, 2015) ("The First Circuit has stated that, when awarding attorneys' fees in an action under Chapter 93A, district courts should follow the approach adopted by the SJC in *Linthicum* . . . ."). Given the number of attorneys that CrossFit engaged on this case, the Court declines to follow the more rigid lodestar approach, and instead will employ the more flexible *Linthicum* standard.

Under *Linthicum*, "'[n]o one factor is determinative, and a factor-by-factor analysis, although helpful, is not required.'" *Twin Fires*, 445 Mass. at 430 (quoting *Berman v. Linnane*, 434 Mass. 301, 303 (2001)); *see also RFF Family P'ship*, 2015 WL 1472253, at *5 (discussing some of the *Linthicum* factors and concluding "[t]he Court, having conducted a careful review of the invoices, need not expend further judicial resources on the subject"); *Trenwick Am. Reinsurance Corp. v. IRC, Inc.*, 2011 WL 2009919, at *2 (D. Mass. May 23, 2011) (explaining that reasonable attorneys' fees under Chapter 93A are determined using the "less structured, more flexible approach" identified in *Linthicum*, rather than more the more formal lodestar method).

"The amount [of damages] recovered is one factor in determining what fee is reasonable,

but is by no means the fundamental factor." *Haddad Motor Grp.*, 603 F.3d at 10 (citations and internal quotation marks omitted); *accord Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 841 (1st Cir. 1990). Indeed, "case law [from the First Circuit and SJC] contains examples of Chapter 93A cases where the fees awarded far exceed the damages awarded." *Haddad Motor Grp.*, 603 F.3d at 10 (citing *Twin Fires*, 445 Mass. at 427-30); *see also RFF Family P'ship*, 2015 WL 1472253, at *3 (noting that prevailing parties are entitled to reasonable attorneys' fees even where damages are nominal); *Jet Line Servs., Inc. v. American Emp'rs Ins. Co.*, 404 Mass. 706, 718 (1989) (holding that attorneys' fees are recoverable so long as the unfair or deceptive conduct underlying the Chapter 93A claim "had some adverse effect upon the plaintiff, even if not quantifiable in dollars"). "Courts have awarded attorneys' fees [under Chapter 93A] not only when damages were awarded, but also where, as here, the prevailing plaintiff received injunctive relief only." *Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 15 (1st Cir. 1996).

In sum, an award of attorneys' fees under Chapter 93A "is to be determined by what the 'services were objectively worth.'" *Computer Sys. Eng'g, Inc. v. Qantel Corp.*, 740 F.2d 59, 71 (1st Cir. 1984) (quoting *Heller v. Silverbranch Constr. Co.*, 376 Mass. 621, 629 (1978)).

In this case, some of the *Linthicum* factors justify a significant fee award. For example, Mustapha filed numerous substantive motions, some of which were frivolous, and which forced CrossFit to expend considerable time and resources in response. Furthermore, there is little doubt that CrossFit's attorneys possess the experience, reputation, and ability to support a relatively high billing rate.

However, at least two of the *Linthicum* factors weigh substantially in favor of reducing CrossFit's fee award considerably. First, although CrossFit obtained injunctive relief, the Court

9

"must take into account the very limited [monetary] recovery" it obtained in this case, a recovery that "fell way short of the amount of damages it sought." *RFF Family P'ship*, 2015 WL 1472253, at *3. Second, the Court cannot ignore the fact that this was (or should have been) a relatively simple case against a *pro se* defendant. Nonetheless, CrossFit retained two law firms that staffed the case with a considerable number of attorneys. Retaining Henshon Klein, a smaller firm than Greenberg Traurig, to conduct some of the work may have limited the fees that CrossFit incurred, but also likely involved considerable duplication as the new attorneys learned the case. Moreover, Henshon Klein's two attorneys spent only 147.5 hours on the matter, while the Greenberg Traurig attorneys, including two partners who billed at rates ranging from $485 to $650 and $795 to $890, spent 852.1 hours. Furthermore, the number of hours billed appears to be very high based on the Court's review of the billing records. For example, the records include $1,215 billed for filing a notice of supplemental authority with the Court, an exercise that should have included little more than submitting a case citation. More importantly, the use of multiple lawyers invariably increases the amount of time billed, because even the best and most efficient lawyers will necessarily communicate with one another over the course of the litigation. While some of that is appropriate in a case of any real magnitude, based on the Court's review of the record, it appears to have been somewhat excessive under these circumstances.

It also appears that a considerable number of the hours billed were related to claims that were not meritorious or ultimately not pursued. The time that CrossFit's lawyers spent litigating its prevailing claim for trademark infringement of the "CrossFit" mark is compensable. CrossFit's trademark infringement claim arises out of the same "chain of events" or "common core of facts" as its Chapter 93A claim: Mustapha's unauthorized and deceptive use of the

"CrossFit" mark that had the potential to confuse CrossFit's consumers.  However, CrossFit's lawyers spent a significant number of hours litigating the trademark infringement claim for Mustapha's use of the "CrossBox," CrossKick," and "CrossTrain," marks, as well as litigating Counts Two and Three, on which it did not prevail.  Furthermore, CrossFit elected to drop its claim for damages under Chapter 93A, even though it prevailed on the substance of the claim and obtained injunctive relief.  Accordingly, a substantial discount appears to be warranted.

Unfortunately, it is difficult—if not impossible—for the Court to distinguish from the attorneys' billing records time expended on meritorious claims as opposed to unmeritorious claims.  *See RFF Family P'ship*, 2015 WL 1472253, at *4 (noting that discounting fees for unmeritorious claims "is easier said than done . . . because most of the submissions . . . fail to distinguish how billed time was divided between claims").  Under the circumstances, CrossFit should be awarded a fee award for prevailing on its trademark infringement claim for the "CrossFit" mark.  That award will be relatively substantial, both in absolute terms and in relation to Mustapha's ability to pay.  However, for the reasons explained above, CrossFit's fee request of $510,846.85 will be reduced considerably.  CrossFit's request will be reduced by 25 percent for work related to claims without merit or that were not pursued; 20 percent based on the inefficiencies caused by the change of law firms, the use of multiple attorneys, and other apparent inefficiencies; and 10 percent based on the relative simplicity of the case and the limited recovery.

Accordingly, CrossFit's fee request will be reduced by 55 percent to $229,881.08. CrossFit's costs in the amount of $24,016.45 appear to be reasonable under the circumstances.

11

**III.**     <u>**Conclusion**</u>

For the foregoing reasons, CrossFit's motion for attorneys' fees and costs is GRANTED

in the amount of $253,897.53, and is otherwise DENIED.

**So Ordered.**

/s/ F. Dennis Saylor

F. Dennis Saylor IV

United States District Judge

Dated: June 23, 2016